Your Honor, this case raises challenges to the lifetime term of supervised release that was imposed by the court, as well as several special conditions of supervised release that were also imposed for life. And, Your Honors, it's the interconnection between the length of the term and the conditions imposed that demonstrates why both lifetime supervision is unreasonable and lifetime restrictions that were imposed are improper. I'd like to get into the lifetime supervision, but just to dovetail on what government counsel from the last case just said, 2256-2 applies to simulated acts under the statute. Government counsel failed to mention that when she was reading the statute. Before that long list of sexual intercourse and all of those things, it applies to actual or simulated acts on that list. Simulated sexual intercourse is something that occurs in PG, PG-13, R-rated movies. It occurs on afternoon soap operas. Is this issue in your case? It is. It is. And, in fact, in this case, it was imposed for life, this condition. So to suggest that it does not cover many of these things is absolutely false. And to then suggest that the language of the statute is not vague, again, that's a complete red herring, because we're not suggesting that the language of the statute is vague. The language of the statute is clear, and it clearly applies to all of the conduct that we're suggesting it applies to. I may come back to that issue. Turning to the lifetime supervision. Just to clarify that, that condition, you're referring to Condition 8, and that's here on Plain Error Review. Is that correct? That is correct. That is correct. And just to stick to that just for a minute, it is on Plain Error Review. We submit that, again, based on the discussion we've just had in the past case, because it's being imposed for life, it is given a greater restriction which demonstrates why it is even worse, because we're not talking about even if one could possibly construe the condition as being somehow limited, if it's only for, say, five years as it was in the last case, to impose a restriction that covers such protected conduct for the remainder of the defendant's life shows that it's an even greater deprivation of liberty than is necessary. And that's why we would submit it meets the standards for plain error. With respect to the lifetime term of supervision, as initially we would submit a remand is required here because the district court simply gave no explanation as to why lifetime supervision was necessary in this case. There's no discussion whatsoever in the sentencing hearing as to why lifetime supervision was being imposed. The record simply silent. Is Daniel a first offender? He is, Your Honor. Did he have a criminal? This is the first thing he was convicted of. Yes. So are there any precedents on applying lifetime supervision on a first offense? Not that I'm aware of, Your Honor. And, you know, obviously this is very different from the first case that was on the calendar this morning. In this case, we're dealing with a 65-year-old man who had no prior criminal history. He was very active in his church. The court made a specific finding that he is not a pedophile. This is a simple possession case. Nothing, no aggravating circumstances here. He was a collector and explained he collected, he does have a sexual addiction, and he collected pornography in general. And child pornography constituted a very small percentage of his overall collection. Could I ask you to discuss what the district court has to say? Now, the district court said quite a bit about the guideline sentence about going through the 3553A factors. And we've said, I think at Weber, that the supervised release is part of the sentence. What, in addition to what the district court said in making his 3553A analysis, does he need to say on supervised release? I don't think we have very much instruction or direction on that issue. Right. I would submit the court has to go through the same analysis as it goes through for the length of the term of incarceration. Now, I think we've said that, in fact, we don't have to go through, make a specific statement about every one of the 3583D factors. Correct. But there does need to be something in the record that gives some indication, then something to the appellate court to allow it to make a decision, to allow it to review the case. Here, there's just nothing in the record as to why lifetime supervision was imposed here as compared to anywhere else. Again, as we said, this is someone with no prior criminal history. The court found he's not likely to reoffend. He's not a pedophile. He was on pretrial release for a very lengthy time before he was actually sentenced, without any incident. So there's simply ‑‑ it's perplexing why it was imposed here. But the fact that the court gave no explanation suggests it has to go back at least for an explanation to allow this court to, in fact, make a better decision, actually allow it to review it. We've got this policy statement in the sentencing guidelines that says if the instant offense of conviction is a sex offense, the statutory maximum term of supervised release is recommended. So an affirmative recommendation from the guidelines policy statement to have a life term. Why isn't the district court's determination that to take that recommendation, why is that an abuse of discretion? Well, number one, the policy statement, of course, was advisory even before the guidelines became advisory. So we're dealing with an advisory statement within an advisory guideline. So it's a super advisory issue here. If Congress had wanted to actually ‑‑ when the guidelines were mandatory, and this is when it was entered into the guidelines, if Congress had wanted to make it mandatory, it could have. It chose not to. It chose to make it a policy statement, making it clear that the term was for any years up to life, which suggests Congress was still leaving it to discretion of the court to make that determination. Now, we're dealing with ‑‑ it says all sex offenses. Well, obviously, sex offenses are different. And I think we can leave it to the judgment of sentencing courts to decide, you know, is there ‑‑ to recognize that there's a difference between someone who merely possesses child pornography and someone who is, in fact, going out and molesting children. There's a difference. And courts, I think, need to recognize that difference. And I think Congress left it advisory just for that purpose. So I think the court certainly, if it's going to impose a lifetime term, there needs to be something in the records to justify it. And when you're dealing with someone who is a first‑time offender well into his 60s, who's a respected member of his community, but has, yes, he has a sexual addiction problem which led to this crime, the court can say, well, we don't need lifetime supervision in this case. We can ‑‑ it would reduce term. And I'd like to reserve the balance of my time if I could. Thank you. May it please the Court. Joe Acroturianakis on behalf of the United States. Like defense counsel, Your Honors, I would like to focus my argument, unless the court has specific questions otherwise, on the lifetime term of supervised release imposed by the court in this case. To answer Your Honor's question, I believe that the record in the district court need only be sufficient to satisfy this court, that the district court has considered the party's arguments and then had a reasoned basis for exercising its discretion to impose a term of supervised release up to the statutory maximum. And in this case, the lifetime term of supervised release is, as the court points out, the recommended term under the guidelines. It was upheld in the Cope case. It's more than justified in the circumstances of this case, particularly given the fact that this defendant, as Judge Larson, and I believe the record makes clear, throughout has admitted his liability for these crimes, but denies all culpability. And defense counsel a moment ago was discussing the need for the record to have something in it that justifies the term of supervised release imposed. And I think that the record here amply demonstrates that such a term, that Judge Larson was within his discretion to impose that term of supervised release. Counsel, go ahead. I'll follow you. Go ahead. Would it ever be an abuse of discretion to impose a lifetime term of supervised release? Would there be any situation where we would say, no, that goes too far? Your Honor, I haven't contemplated that question until this morning when you asked it in the first argument before this court. And in thinking about that, just as I was sitting in the gallery, I don't know that I can conceive of a set of facts where it would be an abuse of discretion for the district court to consider the policy set forth in the guidelines and then to impose that as a term of supervised release. But I don't think that this Court needs to reach that question in this case, because I think that this record shows that there was an ample basis for Judge Larson to impose this term. For example, the — and to step back for just a moment, the government's not contending that in the sentencing colloquy or in any of the statements or argument made in that hearing, that at any point the district judge said, these are the reasons that I'm imposing a lifetime term of supervised release. However, the probation office in its initial report to the Court, both in the recommendation letter and in its report, indicated that that was its recommendation. The government then indicated its agreement with the recommendation and concurrence in the justification for that.  And the term of incarceration, and instead argued for a noncustodial sentence and a reduced term of supervised release. There was a response from the probation department, an addendum to the PSR, where they specifically point out reasons why offenders such as the defendant in this case need to have lifetime supervised release. That being that the issues that underlie these types of offenses are so deeply related to the defendant's life, and so there's a reason, lifelong management, for the — to promote the rehabilitation of the defendant, the offender, and to protect the public. And for that reason — It says feedback. Oh, pardon me, Your Honor. This man is how old? He's in his 60s. I believe he's 64. 64 years old. Yes, Your Honor. He's never been convicted before. He's — Correct. He has all of these improper pictures and was properly convicted for that. This case is somewhat different from the defendant in Cope. It is different from Cope, Your Honor, in that, at a minimum, this defendant was not discussing with another person hunting children and so on and so forth. Right. But even — but all of the statements that have been made before this court and in the district court are only the defendant's statements. That is what we have. We do know that he was — and all of the recommendations about him not being a pedophile and so on are principally based on his own assertions and statements made by the — Dr. Phillips, who is a psychologist, who submitted a report in the defendant's behalf before the sentencing court, which recommendations, apparently, Judge Larson gave limited, if any, weight to. And one thing that we do know about the defendant's statements, at least to Dr. Phillips, is that he wasn't completely forthright and truthful there. And I think that that bears on whether this court should accept any of the representations that the defendant has made concerning his conduct, the reasons why he collected child pornography, why he had this organized or this great of a collection, which — I understand. I understand. He doesn't have to believe him. And I have sentenced enough people to understand that process. But it strikes me that there should be some rationale when we say, no, it's too much. Now, you take the position we never get to that point because in the sentencing guidelines they recommend this. But even in sentencing guidelines, there may be a recommendation, but we still take a look at it to see whether or not it's reasonable under Gall. And it is here, Your Honor, for the reasons that Judge Larson rejected the defendant's arguments for a reduced custodial sentence. The same facts that the defendant urged in asking for a lesser custodial sentence the district judges in position of a lifetime term of supervised release. And he goes through it at length in the sentencing hearing. He talks about how the defendant — I think the real issue is whether or not he has to give specific reasons for going live. And we're struggling with that now because how do you draw the line? If he had given this person 25 years of supervised release, would he have to state reasons? Have we held that? I don't believe we have, Your Honor, or that the court has. I think, though, that COPE supports the imposition. Let me back up. I think COPE is broader. With COPE, counsel, if I can interject, I think I was on COPE. I think there were some repeat history involved in COPE. So I still have my question. Have we ever upheld lifetime supervised release in the case of a first offender? And, you know, maybe I'd be satisfied that we should do that if we had some reasoning of the district court. But if we have no reasons stated that address this issue, it's leaving me a bit uneasy. It sounds almost like to uphold it here would be to say, per se, lifetime supervised release can be imposed in every sex offender case. So what am I missing there? Well, I do disagree with the last statement that Your Honor made, that that's what this court would be saying by upholding the lifetime supervised release in this case. To answer your first question, I know of no case wherein this court has, with a first-time offender, upheld the imposition of a lifetime term of supervised release. However, I think that the district court is within its discretion in imposing a term of supervised release, at least up to the statutory maximum, where the record makes clear that the court has considered the party's arguments for a lesser sentence and has some basis for exercising its discretion to reject those arguments and to go with something different. And here, what the district court did was he considered all those things, the different arguments filed in the parties submitted by, pardon me, in the papers submitted by the parties. The district court considered all those things. He considered the very same facts that were argued both for, in favor by the defense of a reduction in the term of supervised release and a term, and the term of custody and rejected the defense's arguments in both regards. Now, no one talked about the term of supervised release at, the length of the term of supervised release at the sentencing hearing. The defense's focus was on the term of custody. And for that reason, I believe that there is a less of a discussion than what there could have been if those points had been raised by the defense at the sentencing hearing. However, I think that the record still amply demonstrates that the district judge did have a reason for doing what he did, that he individually considered the circumstances of this defendant. He considered the arguments made by defendant's counsel and defendant's behalf. He considered the facts raised by the probation office in its recommendation and by the government in its recommendation, including that the defendant lacks insight into the source of his problems, that he is in denial, really, of what he did or why, and that for those reasons Judge Larson rejected those arguments and was within his discretion to do so. Counsel, do you agree that in imposing these conditions, we treat them the same as the imposition of the sentence of incarceration? That is, are the conditions in supervised release part of the sentence? The conditions of supervised release are part of the sentence in the ‑‑ So the cases like Gall, Vita, et cetera, in your view, would apply here. I'm trying to ‑‑ still looking for a yardstick. Your view is that cases that we have decided or the Supreme Court has decided, dealing with the sentence of imposition of prison time, that those cases would be equally applicable to issues such as a lifetime condition? I don't think that the lifting is that heavy in this case on those issues, Your Honor, because I think Rearden more recently and B in the past covers all of those issues in this case, which this Court reviews on plain error. Those were not objected to in the district court. The specific conditions that are challenged on appeal, I believe, were specifically sanctioned in different cases before this Court, and that it's not plain error for the district court to have imposed them in this case for the reasons that are set forth.  Thank you. Thank you, Your Honor. Just before you leave, as I understand, you agree that this case should go back on the medication issue? Yes, Your Honor. It should go back under Weber on the medication issue. And although I think that this Court would be within its power under Rule 10e2 to correct the error in the ‑‑ what the government believes is an error by the court reporter in the sentencing transcript, the government has no objection to it being sent back in a limited remand for the district judge to correct it. Now, assuming that we don't undo what is in the record and it has to go back, would our remand to go back, would it be change, give the district judge directions to change the sentence to what was reported to be his oral statement in court? Or do we leave it at the discretion of the district judge, if he chooses to do so, to resentence on that particular issue, bring the defendant in and do it ab initio? I think that all that need be done is that the district court have the opportunity to say whether or not it was a mistranscription or whether he in fact intended to impose the physiological testing as a condition. I frankly don't think that if you read the oral pronouncement of the sentence, because psychological is discussed separate from physiological, although the word psychological appears in both places, the way that it's discussed, I think, can only be fairly read to mean that he intended to impose psychological testing or psychological counseling on the one hand and physiological testing on the other hand. And for that reason, I would submit that this Court can correct the mistranscription under Rule 10e2 or alternatively send it back and allow Judge Larson to let us know what it was that he recalled having said or what it was that he intended to say if it wasn't a mistranscription, if it was simply misspeaking on his part. And if he doesn't have specific recollection, he'd have to have, what, another sentencing hearing for that particular sentence, part of the sentence? I don't think that ---- I would find it very difficult if it went back to me to say what word I used. And I'm just wondering where that leaves him. Yes. That ---- I can't disagree with that, Your Honor. That is ---- Same on the medication. Wouldn't he need to do it on an open record so he could resentence, you know, if he were specifying what he meant? I think on the medication issue, it needs to go back without question, Your Honor. On the separate issue about whether the court intended other physiological testing, that it's a different issue. And I don't have an objection with it going back on that issue for since we're going to have the defendant back and all for the purpose of visiting the medication. That is particular, I think, to the circumstances of this case. From a broader perspective, it really is a difficult thing. I don't know that this Court needs to reach it here in light of the particular circumstances. We very often just pass this to the district judge and let him or her decide it, and then we tell them whether right or wrong. That makes it easy. Yes, Your Honor. Thank you. Judge Akuts, one of your first questions to government counsel was would lifetime supervision ever be an abuse of discretion? Obviously, the 3553a factors do apply here, one of which is unwarranted sentencing disparities. So I think you do need to compare whether lifetime supervision is appropriate in one case versus whether it's appropriate in another case. And probation recommends the lifetime supervision in all of these cases now. We don't have that in the record. It is not, though I can represent that to you as someone who's familiar with that. But it won't do us any good because we write the opinion. I can't take your representation. That's fine. It's certainly recommended here, and one of the reasons was given, the probation officer said something about he doesn't have insights into his problem, which, by the way, we had two different treating psychiatrists disagree with probation on that. Probation, by the way, did not have anyone find that he, anyone who had treated him find this. Probation opined that. The government introduced no evidence to contradict the evidence we submitted with respect to the fact that he does have an insight into his problems, that he's not a pedophile. Judge Larson, in fact, agreed with our experts. He said he wasn't a pedophile. Pardon? The judge said he wasn't. Exactly. Which, by the way, Judge Gould, with respect to the associational restrictions imposed in this case, is one reason why clearly not appropriate. The Court made a finding. He's not a danger to children. He's not a pedophile. There's no reason to then restrict his contact from children. No, he said he was a pedophile. He didn't say he wasn't a danger to children. Well, it was the argument was being made that he's not a danger to children because he's not a pedophile. I understand. Okay. So the Court said, yes, I agree, he's not a pedophile, he doesn't have an actual interest in sex with children. I believe the record says that, Your Honor. Well, I know the defendant said that. Well, and I think the Court was agreeing with us. But if there's a finding in there, then that helps you. Well, I believe that there is a finding. So the only findings that the Court made actually helps us, and the rest we're dealing with a silent record. So it's not clear, you know, exactly why lifetime would be appropriate here versus, you know, the last case it was five years. The last case, which I'll be arguing, it's five years. Help me with this. You were talking earlier about distinguishing Reardon because that was clear air review or plain air review. Here we're doing plain air review in the lifetime. Is that true? It's not true, Your Honor. We expressly objected to imposition of a lifetime term of supervised release. You made an objection? Absolutely, Your Honor. Counsel for the government, please. Pages 8 to 10 of the sentencing memo. 8, 10. Pages 8, 9, and 10 of the sentencing memo, which is found in the confidential sentencing documents. Defendants expressly objected to imposition of a lifetime term of supervised release. But the other conditions, I believe, were that the other conditions were challenged. Right. Some of the conditions were challenged. Others were not. But with respect to the lifetime term, it expressly was. It expressly was. Can you sum up now, please? Your time is up. Thanks, Your Honor. I think we pretty much covered it. There were obviously some conditions we didn't get to, like able testing, which I think the Court does need to take a very close look at, that it is junk science, that there's no basis to impose a condition such as able testing. Perhaps it's going to get discussed in the other cases this morning. But I think the Court does need to take a close look at that. In any event, in this case, because the lifetime term, it's not clear why it was imposed. We need to send this case back. Thank you. This case is submitted, and we'll take a five-minute recess.
judges: Wallace, Gould, Ikuta